**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------X   Case No.:

HELEN ROSALES,

                             Plaintiff,                  **COMPLAINT**

       -against-

                                           **PLAINTIFF DEMANDS**
POPEYES LOUISIANA KITCHEN, INC.,    **A TRIAL BY JURY**
BAYCHESTER CHICKEN BG LLC d/b/a
"POPEYES RESTAURANT" and YEASHER
ARAFAT, *individually*,

                          Defendants.
----------------------------------------------------------------X

       Plaintiff, HELEN ROSALES, by and through her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants as follows:

## NATURE OF THE CASE

1. Defendant BAYCHESTER CHICKEN BG LLC d/b/a "Popeyes Restaurant" ("Franchisee Defendant" or "POPEYES RESTAURANT") owns, operates, or controls a fast-food restaurant located at 1201 East 233rd Street, Bronx, New York 10466, operating under the trade name "Popeyes."

2. Franchisee Defendant is franchised to operate a Popeyes restaurant under contract with Defendant POPEYES LOUISIANA KITCHEN, INC. ("Franchisor Defendant" or "POPEYES LOUISIANA KITCHEN")

3. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), the New York State Human Rights Law, New York State Executive Law § 296, et. seq. ("NYSHRL"); and the New York City Human Rights Law, New York City Administrative Code § 8-502(a), et. seq., and seeks damages to

1

redress the injuries she has suffered as a result of being sexually harassed, subjected to a hostile work environment, and discriminated against on the basis of her gender (female).

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§ 1331 and 1343.

5. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state and city law pursuant to 28 U.S.C. §1367.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), as the acts complained of occurred within the Southern District of New York.

## PROCEDURAL PREREQUISITES

7. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

8. By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 17, 2021; (b) receiving a Notice of Right to Sue for Defendant POPEYES LOUISIANA KITCHEN, INC., from the EEOC on November 15, 2021 and a Notice of Right to Sue for Defendant BAYCHESTER CHICKEN BG LLC d/b/a "POPEYES RESTAURANT" on November 15, 2021; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the respective Notices of Right to Sue are annexed hereto as **Exhibit A**; a copy of the transmittal letter to the

NYCCHR is annexed hereto as **Exhibit B**.

## PARTIES

9. That at all times relevant hereto, Plaintiff HELEN ROSALES ("Plaintiff") is female and a resident of the State of New York and the County of Bronx.

10. Upon information and belief, Franchisee Defendant POPEYES RESTAURANT was and is a domestic professional service limited liability company duly existing pursuant to, and by virtue of, the laws of the State of New York with a principal place of business located at 1201 East 233rd Street, Bronx, New York 10466.

11. At all times relevant, Franchisor Defendant POPEYES LOUISIANA KITCHEN, INC. was and is a foreign business corporation that has a principal place of business at 5707 Blue Lagoon Drive, Miami, Florida 33126.

12. Upon information and belief, Franchisor Defendant grants franchisees the ability to operate Popeyes restaurants and grants sublicenses to franchisees to use the Popeyes trademarks.

13. At all relevant times, Franchisor Defendant was an employer of Plaintiff within the meaning of the NYLL, Title VII, the NYSHRL, and the NYCHRL.

14. Facts which demonstrate that Franchisor Defendant was Plaintiff's employer include, but are not limited to, the following:

   a. Franchisor Defendant permitted Plaintiff to work;

   b. Franchisor Defendant has an economic interest in the Popeyes location where Plaintiff worked;

   c. Franchisor Defendant benefitted from Plaintiff's work;

   d. Franchisor Defendant had either functional and/or formal control over the terms and conditions of Plaintiff's work; and

   e. Plaintiff performed work integral to Franchisor Defendant's operation.

15. Upon information and belief, Defendants POPEYES RESTAURANT and POPEYES LOUISIANA KITCHEN ("Corporate Defendants"), are joint employers. As such, there are commonalities of hiring, firing, discipline, pay, insurance, records, and supervision.

16. By way of a first example, Defendant POPEYES RESTAURANT had the power to hire and fire Plaintiff, controlled the terms and conditions of her employment, and determined the rate and method of any compensation in exchange for Plaintiff's services.

17. By way of a second example, upon information and belief, Defendant POPEYES LOUISIANA KITCHEN controls and/or approves the appointment of management level employees of Defendant POPEYES RESTAURANT.

18. By way of a third example, upon information and belief, Defendant POPEYES LOUISIANA KITCHEN maintains and/or oversees Defendant POPEYES RESTAURANT's point of sale ("POS") system.

19. By way of a fourth example, upon information and belief, Defendant POPEYES LOUISIANA KITCHEN supervises the opening of Popeyes franchises, including the opening of Defendant POPEYES RESTAURANT.

20. By way of a fifth example, upon information and belief, Defendant POPEYES LOUISIANA KITCHEN imposes strict operation restrictions on Defendant POPEYES RESTAURANT, including but not limited to, restaurant appearance and layout requirements, operations standards, management standards, use of supplies, and advertising standards. Franchisor Defendant also guides Franchisee Defendant on how to hire and train employees and provides materials and training regarding giving directions to employees as to how to perform their jobs.

21. By way of a sixth example, upon information and belief, Defendant POPEYES LOUISIANA KITCHEN utilizes its Operations Excellence Support and Franchise

Business Consultant to ensure that Defendant POPEYES RESTAURANT is in compliance with the nation-wide Popeyes standards of operations. Further, Franchisee Defendant was provided with a field-based franchise business team to support its operations.

22.    At all times material, Defendant YEASHER ARAFAT ("ARAFAT") was an employee of Defendant POPEYES RESTAURANT holding the title of "General Manager."

23.    Upon information and belief, in his capacity as General Manager, Defendant ARAFAT was Plaintiff's supervisor and/or had supervisory authority over Plaintiff. Defendant ARAFAT had the authority to hire, fire or affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same.

24.    At all relevant times, Plaintiff was an employee of Defendants.

25.    Upon information and belief, at all times material, Defendant ARAFAT was and is an individual residing in the State of New York.

## BACKGROUND

26.    While employed by Corporate Defendants, Plaintiff worked at multiple locations. Plaintiff understood that employees of Corporate Defendants could be moved depending on the staffing needs of the business. Throughout Plaintiff's employment with Corporate Defendants, Plaintiff experienced unlawful sexual harassment and noted complaints by other young women of the same. Plaintiff understood and experienced those complaints were met with retaliation by management, fostering fear within Plaintiff and others. The environment that was permitted to exist and fostered by Corporate Defendants and their agents was one that was permeated with sexual harassment, a complete lack of care for employees and their rights, and unlawful hostile work environments at each location, under each different manager.

**MATERIAL FACTS**

27.    In or around August 2020, Plaintiff was hired by Defendants as a cashier at 815 Hutchinson River Parkway, Bronx, NY 10465 (the "Throggs Neck Location").

28.    At all times relevant, Plaintiff was told she would be earning $15.00 per hour.

29.    At all times relevant, Plaintiff worked approximately five (5) days per week. Plaintiff worked approximately seven (7) hours per day and approximately 23-35 hours per week.

30.    Plaintiff's expected 2020 salary was between approximately $20,000.00 and $30,000.00.

31.    At all times relevant, Plaintiff's job duties included, but were not limited to: maintaining the food stations; preparing take-out and delivery orders; and working the cash register.

32.    Plaintiff was qualified for her job and performed satisfactorily throughout her employment.

33.    During Plaintiff's approximately one-month tenure at Defendants' Throggs Neck Location, Plaintiff was informed by her coworkers that the General Manager, Raymond ("Raymond") had a history of sexually harassing underaged female employees.

34.    While there, Plaintiff met Brenda, another employee of Corporate Defendants working at the Throggs Neck Location who was sixteen years old at the time. Brenda informed Plaintiff that Brenda had threatened to report Raymond for sexual harassment. Brenda informed Plaintiff that Raymond told Brenda that no one would believe her because he has people in the company who "look out" for him. Plaintiff was scared and nervous to continue to work with Raymond and for Corporate Defendants after hearing this narrative.

35.    Some time later, Raymond became aware that Plaintiff had been speaking with Brenda about Brenda's complaints of sexual harassment. Raymond pulled Plaintiff into a private room and stated to Plaintiff "I don't like people who come to work to talk shit." Plaintiff viewed this as a threat to keep quiet about the rampant sexual harassment. Scared, Plaintiff responded that she was only there to do her job and that she intended to get along with her

coworkers while she was employed by Corporate Defendants.

36. Also while working at the Throggs Neck Location, Plaintiff witnessed female employees report instances of sexual harassment and be terminated or transferred soon after in acts of retaliation for their complaints.

37. In or around September 2020, Plaintiff was transferred to another of Defendants' locations, located at 1201 East 233rd Street, Bronx, NY 10466 (the "Baychester Location") due to staffing needs.

38. Plaintiff met Defendant ARAFAT at the Baychester Location.

39. Upon meeting Plaintiff at the Baychester Location, Defendant ARAFAT made a sexually suggestive comment towards Plaintiff. Seeing Plaintiff react uncomfortably, Defendant ARAFAT stated, "just kidding, another girl quit this job because I said that to her and she was sensitive." Plaintiff was nervous that she would continue to experience harassment based on Defendant ARAFAT's bold statement.

40. In her first two days at the Baychester Location, Plaintiff was subjected to sexually harassing comments by Defendant ARAFAT, who repeatedly called her "beautiful" and "pretty girl" and commented about the size of Plaintiff's breasts, making Plaintiff feel extremely uncomfortable.

41. While interacting with Plaintiff, Defendant ARAFAT often licked his lips and looked Plaintiff's body up and down in a sexual manner when speaking to her.

42. Beginning on or about September 14, 2020, whenever Plaintiff requested assistance from Defendant ARAFAT, he would lick his lips while staring at her and tell her "You can have anything you want." Plaintiff was extremely uncomfortable that her supervisor was treating her in a sexual manner and felt degraded.

43. By way of another example, Defendant ARAFAT would frequently state that he wanted

Plaintiff to become his "third wife."

44. Upon information and belief, Defendant ARAFAT interacted with many other female employees of Corporate Defendants in a similar manner as he did with Plaintiff. Plaintiff understood this to be true as Plaintiff observed other female employees of Corporate Defendants complaining about being sexually harassed by Defendant ARAFAT.

45. Beginning on or about September 29, 2020, Defendant ARAFAT's advances became more aggressive. **When Plaintiff requested assistance or information from him, Defendant ARAFAT would respond with comments such as "if you suck my dick, I'll do it," referring to the requested information or assistance.**

46. On other occasions that Plaintiff asked Defendant ARAFAT for help on the job, Defendant ARAFAT would ask Plaintiff "what will you give me?" implying that Plaintiff owed him sexual favors for Defendant ARAFAT helping Plaintiff with work-related tasks.

47. Plaintiff felt extremely uncomfortable and humiliated by Defendant ARAFAT's advances and felt trapped as she was still a relatively new employee of Corporate Defendants, and still in need of assistance from members of management, often including Defendant ARAFAT when the two were scheduled together.

48. As time went on, Defendant ARAFAT's sexual comments and advances grew more severe.

49. On or about October 11, 2020, Defendant ARAFAT began frequently and openly making sexual comments to Plaintiff, **stating "I want to fuck you… I want to eat you out… I want you to suck my dick…"** Many of these comments were made in front of other POPEYES RESTAURANT employees including, but not limited to, Defendant POPEYES RESTAURANT General Manager Kayla Brathwaite ("Brathwaite"). As such, Defendant POPEYES RESTAURANT was put on notice about the blatant sexual harassment, and management did nothing to protect Plaintiff from the hostile work environment.

50. Plaintiff told Defendant ARAFAT that she was underaged multiple times, to which Defendant ARAFAT would disregard or respond, "that's fine." Plaintiff was disgusted that her attempts to rebuff Defendant ARAFAT were unsuccessful.

51. On or about October 21, 2020, Plaintiff asked Defendant ARAFAT to drive her home, along with her friend and coworker, Noah Nazario ("Nazario"), as Plaintiff's shifts ended after midnight when public transportation options at that time were scarce, and Plaintiff felt unsafe traveling alone at that time. Plaintiff understood that Defendant ARAFAT often drove Nazario home, giving Plaintiff a false sense of security and trust in Defendant ARAFAT. In response, Defendant ARAFAT asked Plaintiff, **"Are you going to suck my dick if I give you a ride?"**

52. Despite these comments, Plaintiff took a ride home with Defendant ARAFAT and Nazario that day. After dropping off Nazario, Defendant ARAFAT began **telling Plaintiff that one of Plaintiff's piercings "turned [him] on."** In that same conversation, **Defendant ARAFAT called Plaintiff sexy and detailed how he'd like to receive oral sex from her.**

53. Plaintiff felt she had no other option but to remain silent for the remainder of the drive. Plaintiff felt extreme fear and disgust. Defendant ARAFAT drove Plaintiff home approximately three times before she was able to find alternate transportation and was subjected to the same sexual harassment each and every time.

54. A short time later, Defendant ARAFAT was transferred to a new Defendant POPEYES LOUISIANA KITCHEN location in Manhattan to fulfill staffing and training needs.

55. Plaintiff was afraid to report Defendant ARAFAT's sexual harassment to Corporate Defendants' managers because Plaintiff knew that management, including Brathwaite, had witnessed the sexual harassment and did nothing to stop it, and because Plaintiff was warned by coworkers at the Throggs Neck Location that sexual harassment by men in

management, which included Defendant ARAFAT, was tolerated and ratified by Corporate Defendants.

56. Plaintiff did not feel comfortable discussing her own sexual harassment due to the hostile environment enabled by Corporate Defendants and their actors.

57. After Defendant ARAFAT's transfer, Amir Hussain ("Hussain") was brought in to fill Defendant ARAFAT's management position.

58. Upon his start date, Hussain was very critical of Plaintiff and was often flippant and disrespectful when addressing Plaintiff.

59. On or about November 9, 2020, Plaintiff left Defendant POPEYES RESTAURANT and the Baychester Location, effectively resigning from her position, as she felt she had no other choice after being continuously subjected to illegal sexual harassment.

60. Plaintiff felt offended, disturbed, and humiliated by the illegal sexual harassment.

61. Defendants have shown a pattern and practice of creating and enabling a hostile working environment, which unreasonably interfered with Plaintiff's work environment.

62. **Plaintiff was treated differently (sexually harassed) by Defendants, solely due to her gender (female)**.

63. But for the fact that Plaintiff is a female, Defendants would not have treated her differently.

64. Defendant ARAFAT's actions were unsolicited, unwelcome, and offensive.

65. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

66. The above are just some of the acts of sexual harassment and discrimination that Plaintiff experienced on a regular and continual basis while employed by Defendants.

67. Defendants had knowledge of and/or acquiesced in the discrimination and sexual harassment by Defendant ARAFAT.

68. Plaintiff has been unlawfully discriminated against, sexually harassed, humiliated,

degraded and belittled, and as a result, suffers loss of rights, emotional distress, loss of income, and earnings.

69. As a result of Defendants' actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

70. As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff, Plaintiff has suffered severe emotional distress.

71. As a result of the acts and conduct complained of herein, Plaintiff has suffered emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

72. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdiction limits of the Court.

73. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**(Not Against Individual Defendant)**

74. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

75. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., for relief based upon the unlawful employment practices of the above-named Corporate Defendants. Plaintiff complains of Corporate Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender (female/sexual harassment).

76. Corporate Defendants engaged in unlawful employment practices prohibited by 42 U.S.C.

§ 2000e et seq., by discriminating against Plaintiff because of her gender (female/sexual harassment).

## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

78. Executive Law § 296 provides that,

> 1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, **sex**, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

79. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her sex (female/sexual harassment).

## AS A THIRD CAUSE OF ACTION UNDER NEW YORK STATE LAW AIDING AND ABETTING (Against Defendant ARAFAT)

80. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

81. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

82. Defendant DOE engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION

12

**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

83.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

84.     The New York City Administrative Code §8-107(1) provides that,

> It shall be an unlawful discriminatory practice: (a) For an employer
> or an employee or agent thereof, because of the actual or perceived
> age, race, creed, color, national origin, **gender**, disability, marital
> status, sexual orientation or alienage or citizenship status of any
> person, to refuse to hire or employ or to bar or to discharge from
> employment such person or to discriminate against such person in
> compensation or in terms, conditions or privileges of employment."
> (emphasis added).

85.     Defendants engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working

conditions, and otherwise discriminating against Plaintiff because of her gender

(female/sexual harassment).

**JURY DEMAND**

86.     Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.      Declaring that Defendants engaged in unlawful employment practices prohibited by Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq., the New York

State Human Rights Law, New York State Executive Law, § 296 et. seq., and the New

York City Human Rights Law, Administrative Code § 8-107 et seq., in that Defendants

sexually harassed and discriminated, against Plaintiff on the basis of her gender;

B.      Awarding Plaintiff compensatory damages for mental, and emotional injury, distress, pain

and suffering and injury to her reputation in an amount to be proven;

C.      Awarding Plaintiff punitive damages;

D.      Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the

action; and

E.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy Defendants' unlawful employment practices.


Dated:  February 10, 2022
        New York, New York


                                        **PHILLIPS & ASSOCIATES,**
                                        **Attorneys at Law, PLLC**



                        By:     *Brittany Stevens*
                                Brittany A. Stevens, Esq.
                                Morgan Mickelsen, Esq.
                                *Attorneys for Plaintiff*
                                45 Broadway, Suite 430
                                New York, New York 10006
                                T: (212) 248-7431
                                F: (212) 901-2107
                                bstevens@tpglaws.com
                                mmickelsen@tpglaws.com